1
2
3
4
5
6
7
8          UNITED STATES DISTRICT COURT
9          CENTRAL DISTRICT OF CALIFORNIA
10
11 | GLENN RAFAEL TOWERY,          )  Case No. CV 10-5577 JHN(JC)
                                   )
12 |              Petitioner,      )  REPORT AND RECOMMENDATION
                                   )  OF UNITED STATES MAGISTRATE
13 |        v .                    )  JUDGE
                                   )
14 | K. HARRINGTON, Warden,        )
                                   )
15 |              Respondent.      )
                                   )
16 |  _____ )

17        This Report and Recommendation is submitted to the Honorable

18  Jacqueline H. Nguyen, United States District Judge, pursuant to 28 U.S.C.

19  § 636 and General Order 05-07 of the United States District Court for the Central

20  District of California.

21  **I.    SUMMARY**

22        On July 20, 2010, Glenn Rafael Towery ("petitioner"), a state prisoner

23  proceeding *pro se*, constructively filed a Petition under 28 U.S.C. § 2254 for Writ

24  of Habeas Corpus by a Person in State Custody (the "Petition") and exhibits

25  ("Petition Ex.").[1]  Petitioner challenges a 1998 conviction and sentence in Los

26

27        [1]Although the Petition is file-stamped July 27, 2010, petitioner appears to have signed the
    Petition on July 20, 2010.  Pursuant to the mailbox rule, as set forth in Houston v. Lack, 487 U.S.
28  266, 271-76 (1988), the date a pro se prisoner provides a federal habeas application to prison
                                                              (continued...)

Angeles County Superior Court and the execution of such sentence on the following essential grounds:  (1) the trial court's imposition of a ten-year consecutive enhancement based on petitioner's personal use of a firearm under California Penal Code ("CPC") section 12022.53(b), violated CPC sections 1170.1 and 1170.11,[2] and the court should instead have imposed a sentence equivalent to one third of ten years (Ground One); (2) petitioner's trial counsel was constitutionally ineffective at sentencing because counsel failed to argue that the statutes in issue required the trial court to impose a sentence equivalent to one third of ten years on the personal use of a firearm enhancement (Ground Two); (3) the California Department of Corrections and Rehabilitation ("CDCR") has improperly denied petitioner post-sentence work time day-for-day (*i.e.*, 50 percent) credit earning status and has instead afforded him only 15 percent credit (Ground

---

[1](...continued)
authorities for mailing is treated as the date of filing for statute of limitations purposes. Consequently, this Court treats July 20, 2010, the earliest date on which petitioner could have provided the Petition to prison authorities for mailing, as the constructive filing date.  To the extent available, the Court similarly treats the signature date on other documents filed by petitioner (or the date on the proof of service or other attached document signed by petitioner if later) as the constructive filing date of such documents.

[2]CPC section 12022.53(b) calls for the imposition of an additional consecutive ten year enhancement for offenders who personally use a firearm in the commission of certain felonies, including robbery – a violation of CPC section 211.  Cal. Penal Code § 12022.53(b)(4).  Taken together, and as pertinent here, CPC sections 1170.1 and 1170.11 generally provide that, except as otherwise provided by law, and subject to CPC section 654, when a person is convicted of two or more felonies and a consecutive term is imposed, the aggregate sentence shall consist of the sum of the principal term (defined to include the greater term of imprisonment imposed for any of the crimes, including any term imposed for applicable specific enhancements), the subordinate term (defined to consist of one-third of the middle term of imprisonment prescribed for each other felony conviction for which a consecutive term is imposed, to include one-third of the term imposed for any specific enhancements applicable to those subordinate offenses), and any additional term imposed for applicable enhancements for prior convictions, prior prison terms and the commission of a felony while on bail or recognizance.  Cal. Penal Code §§ 1170.1(a), 1170.11.

Three);[3] and (4) petitioner's appellate counsel was constitutionally ineffective, presumably in failing to challenge Grounds One and Two raised herein on direct appeal (Ground Four).

On December 2, 2010, respondent filed a Motion to Dismiss ("Motion to Dismiss") in which he argues that the Petition is time-barred by the one-year statute of limitations set forth in 28 U.S.C. § 2244(d).[4]   On December 12, 2010, petitioner constructively filed an Opposition to the Motion to Dismiss ("Opposition").   On December 23, 2010, respondent filed a Reply ("Reply").

Based on the record and the applicable law, the Motion to Dismiss should be granted and this action should be dismissed with prejudice because petitioner's claims are time-barred.

**II.    PROCEDURAL HISTORY**[5]

**A.    Conviction, Sentence and Direct Appeal**

On July 7, 1998, a Los Angeles County Superior Court ("LASC") jury found petitioner guilty of grand theft (count 1), second degree robbery (counts 2, 3) and assault with a firearm (count 4).  (Petition at 2; Lodged Docs. 1, 2).  The jury further found true allegations that (1) as to count 2, petitioner personally used

---

[3]In California, persons who are serving a term of state prison may earn credit against their term if they participate in qualifying work or training programs. Cal. Penal Code § 2933. Generally, a prisoner may earn one day of such "worktime credit" for each day of participation, reducing the term of incarceration by up to 50 percent.  In Re Pope, 50 Cal. 4th 777, 779 (2010). Certain statutes, however, restrict the amount of credit that may be earned by prisoners who have been convicted of specified violent offenses. Id. Pursuant to CPC section 2933.1(a), persons who have been convicted of qualifying felonies (identified in CPC 667.5(c) to include any robbery, any felony in which the defendant uses a firearm which use has been charged and proved as provided in CPC 12022.3(a), 12022.5(a) or 12022.55, and any violation of CPC 12022.53), may earn credit against their term of no more than 15 percent.

[4]Respondent concurrently lodged multiple documents ("Lodged Doc.").

[5]To the extent not otherwise indicated, the procedural history set forth herein is based on the dockets of the California Court of Appeal and the California Supreme Court (available via http://appellatecases.courtinfo.ca.gov) of which this Court takes judicial notice.

a firearm within the meaning of CPC sections 12022.5(a)(1) and 12022.53(b); (2) as to counts 3 and 4, petitioner furnished a firearm to another person within the meaning of  CPC section 12022.4; and (3) as to counts 3 and 4, a principal was armed with a firearm within the meaning of CPC section 12022(a)(1).  (Lodged Doc. 3 at 2).

On July 21, 1998, the LASC sentenced petitioner to a total of seventeen years and four months in state prison, consisting of (1) as to count 2, a base term of 5 years plus 10 consecutive years on the accompanying CPC sections 12022.5(a)(1) and 12022.53(b) gun enhancement allegation; (2) as to count 1, a consecutive 8 month term (one third of the 2-year mid-term); and (3) as to count 3, a consecutive 1 year term (one third of the 3-year mid-term) plus 8 months (one third of the 2-year mid-term) on the accompanying CPC section 12022.4 gun enhancement allegation.  The trial court stayed the remaining portion of its sentence.  (Petition at 2; Lodged Docs. 1, 2; Lodged Doc. 3 at 2-3).  The LASC subsequently corrected the sentence to sixteen years and eight months in state prison, deleting the eight-month CPC 12022.4 gun enhancement sentence on count 3.  (Lodged Doc. 2).

On July 29, 1999, the California Court of Appeal determined that petitioner had been afforded presentence credit in excess of the 15 percent of actual confinement to which he was entitled (due to his conviction on a felony with personal gun use pursuant to CPC 12022.5), modified the judgment accordingly, and otherwise affirmed the judgment in Case No. B124798.[6]  (Lodged Doc. 3). On October 20, 1999, the California Supreme Court denied review in Case No. S081930.  (Lodged Doc. 4).  The record does not reflect that petitioner sought further direct review.

---

[6]Petitioner's sole contention on appeal was that the prosecutor improperly used a peremptory challenge to exclude an African-American woman from the jury in violation of petitioner's right to be tried by a jury drawn from a representative cross section of the community.  (Lodged Doc. 3 at 4).

**B.   Administrative Grievances/Appeals**

On July 29, 2008, petitioner submitted an internal prison grievance asserting that his sentence should be recalculated because his commitment offense was not violent, and he was not receiving the 50 percent credit to which he was entitled. (Lodged Doc. 21).   Petitioner proceeded up to the final level of administrative review.   (Lodged Docs. 21, 22).   On March 24, 2009, petitioner's appeal was rejected at the final level of administrative review.   (Lodged Doc. 22).   On May 5, 2010, a subsequent appeal by petitioner challenging the CDCR's credit calculations was also rejected at the final level of administrative review.   (Lodged Doc. 23).

**C.   Post-Conviction Petitions**

On November 6, 2008, petitioner constructively filed a habeas petition in the LASC ("First State Petition").[7]   (Lodged Doc. 5).   On January 22, 2009, the LASC denied the First State Petition.   (Lodged Docs. 6, 8).

On April 16, 2009, petitioner filed a habeas petition in the California Court of Appeal in Case No. B215414 ("Second State Petition").[8]   (Lodged Doc. 7).   On June 11, 2009, the Court of Appeal denied the Second State Petition.   (Lodged Doc. 7).[9]

---

[7]Petitioner raised the following claims in the First State Petition:   (1) the CDCR miscalculated petitioner's prison credits because it:   (a) should have run the ten-year enhancement concurrently with the other sentences imposed in this case; and (b) should have afforded him 50 percent credit earning status for his non-violent offenses; and (2) the prosecutor pursued a vindictive and selective prosecution against petitioner.   (Lodged Doc. 5).

[8]In the Second State Petition petitioner raised the same claims contained in the First State Petition.

[9]The Court of Appeal reasoned that to the extent petitioner asserted that his sentence enhancement was mean to run concurrently with the balance of his sentence he was in error and was misreading the abstract of judgment.   With respect to petitioner's remaining credit calculation claim, the Court of Appeal determined that petitioner had failed to submit all reasonably available documents addressing the issue, had failed to demonstrate that he had

(continued...)

On December 2, 2009, petitioner constructively filed another habeas petition in the LASC, which he constructively amended on December 29, 2009 ("Third State Petition").[10] (Lodged Doc. 9). On January 6, 2010, the LASC denied the Third State Petition. (Lodged Doc. 10).

On February 1, 2010, petitioner constructively filed a purported Addendum to the Third State Petition in the LASC ("Fourth State Petition").[11] (Lodged Doc. 11). The LASC denied the Fourth State Petition on February 19, 2010. (Lodged Doc. 12).

On April 7, 2010, petitioner constructively filed another habeas petition in the LASC ("Fifth State Petition").[12] (Lodged Doc. 13). On April 19, 2010, the LASC denied the Fifth State Petition. (Lodged Doc. 14).

On April 27, 2010, petitioner constructively filed a petition for writ of madamus in the California Court of Appeal in Case No. B224286 ("Sixth State

---

[9](...continued)
exhausted his administrative remedies, and had failed to establish that he had actually earned the credits that had assertedly been denied him. The Court of Appeal rejected petitioner's remaining vindictive/selective prosecution claim, finding that it was conclusory and had been procedurally defaulted due to petitioner's inadequate explanation of his delay in seeking relief. (Lodged Doc. 7).

[10]In the Third State Petition, petitioner raised the following claims: (1) the trial court had erroneously imposed an upper term sentence of five years on count 2 based on facts not determined by a jury; (2) the trial court erroneously permitted the jury to hear and convict him of charges that were stricken before trial – namely two enhancements (CPC sections 12022.53(b) and 12022.4) that were stricken by the District Attorney in the Amended Complaint – rendering petitioner convicted of only non-violent offenses and entitling him to additional sentencing credits. (Lodged Doc. 9).

[11]Petitioner again asserted therein that an Amended Complaint reflected that certain allegations had been stricken, namely a CPC 12022.4 allegation and CPC 667 prior conviction allegations. (Lodged Doc. 11).

[12]In the Fifth State Petition petitioner raised the same claims contained in the instant Federal Petition. (Lodged Doc.13).

1    Petition").[13]  (Lodged Doc. 15).  On May 26, 2010, the Court of Appeal denied the
2    Sixth State Petition.  (Lodged Doc. 16).[14]

3         On June 4, 2010, petitioner constructively filed a petition for review of the
4    Court of Appeal's denial of the Sixth State Petition in the California Supreme Court
5    in Case No. S183507 ("Seventh State Petition").[15]  (Lodged Doc. 17).  The California
6    Supreme Court denied the Seventh State Petition on July 14, 2010.  (Lodged Doc.
7    18).

8         As noted above, petitioner constructively filed the instant federal Petition on
9    July 20, 2010.

10        On September 22, 2010, petitioner constructively filed another habeas
11    petition in the California Court of Appeal in Case No. B227644 ("Eighth State
12    Petition").[16]  (Lodged Doc. 19).  The Court of Appeal denied the Eighth State
13    Petition on January 10, 2011.

14        On September 22, 2010, petitioner constructively filed another habeas
15    petition in the California Court of Appeal in Case No. B227647 ("Ninth State

16    _____

17        [13]In the Sixth State Petition petitioner raised the same claims contained in the instant
      Federal Petition.  (Lodged Doc.15).

18
19        [14]The Court of Appeal rejected petitioner's claims in the Sixth State Petition on
      procedural grounds and on the merits.  As to the former, the Court of Appeal indicated that
20    petitioner was procedurally defaulted from raising the issues presented in unjustified, successive
      habeas corpus petitions, and from challenging the validity of his conviction due to his
21    inadequately explained delay in seeking relief.  As to the merits, the Court of Appeal reasoned:
      (1) the sentence enhancement imposed pursuant to CPC 12022.53(b) required that the
22    enhancement, attached to the base term, run fully and consecutively; (2) petitioner failed to
      demonstrate that his trial or appellate counsel was ineffective; and (3) petitioner's challenge to
23    his credit-earning ability had already been considered and rejected by such court (referring to the
      denial of the Second State Petition).  (Lodged Doc. 16).
24

25        [15]In the Seventh State Petition petitioner claimed the Court of Appeal erred in treating the
      Sixth State Petition as a petition for writ of habeas corpus, and reasserted the claims contained in
26    the instant Federal Petition.  (Lodged Doc.17).

27        [16]In the Eighth State Petition, petitioner raised a single claim – that the prosecutor
28    engaged in a vindictive/selective prosecution of petitioner.  (Lodged Doc. 19).

Petition").[17]  (Lodged Doc. 20).  The Court of Appeal denied the Ninth State
Petition on January 10, 2011.

On November 12, 2010, petitioner filed a habeas petition in the California
Supreme Court in Case No. S188122 ("Tenth State Petition").  The California
Supreme Court denied the Tenth State Petition on May 18, 2011.

On January 13, 2011, petitioner filed another habeas petition in the
California Court of Appeal in Case No. B230139 ("Eleventh State Petition").  The
Court of Appeal denied the Eleventh State Petition on February 3, 2011.

On January 21, 2011, petitioner filed a petition for review of the Court of
Appeal's denial of the Eighth State Petition in Case No. S190004 ("Twelfth State
Petition").  The California Supreme Court denied the Twelfth State Petition on
March 2, 2011.

On February 7, 2011, petitioner filed another habeas petition in the
California Supreme Court in Case No. S190460 ("Thirteenth State Petition").  The
California Supreme Court denied the Thirteenth State Petition on July 27, 2011.

On February 16, 2011, petitioner filed another habeas petition in the
California Supreme Court in Case No. S190753 ("Fourteenth State Petition").  The
California Supreme Court denied the Fourteenth State Petition on July 27, 2011.

## III.   ANALYSIS

### A.   Accrual of Statute of Limitations

Pursuant to 28 U.S.C. § 2244(d)(1), a one-year statute of limitations exists
for the filing of habeas petitions by persons in state custody.  The limitation period
runs from the latest of:  (1) the date on which the judgment became final by the
conclusion of direct review or the expiration of the time for seeking such review

---

[17]In the Ninth State Petition, petitioner raised a single claim – that the trial court
erroneously relied on facts contained in the probation report even though petitioner never had an
opportunity to view such report or to discuss it with his counsel before sentencing.  (Lodged Doc.
20).

8

(28 U.S.C. § 2244(d)(1)(A)); (2) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action (28 U.S.C. § 2244(d)(1)(B)); (3) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review (28 U.S.C. § 2244(d)(1)(C)); or (4) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence (28 U.S.C. § 2244(d)(1)(D)).

The Court must evaluate the commencement of the limitations period on a claim-by-claim basis. Souliotes v. Evans, 622 F.3d 1173, 1180 (9th Cir. 2010), vacated on other grounds, 2011 WL 3606632 (9th Cir. Aug. 17, 2011) (vacating in light of Lee v. Lampert, 2011 WL 3275947, at *3 (9th Cir. Aug. 2, 2011) (en banc) (finding credible claim of actual innocence is an exception to federal habeas statute of limitations)); see also Fielder v. Varner, 379 F.3d 113, 119-22 (3d. Cir. 2004) (Alito, J.) (holding that section 2244(d)(1) applies on a claim-by-claim basis), cert. denied, 543 U.S. 1067 (2005).

Petitioner's conviction became final on January 18, 2000 – ninety days after the California Supreme Court denied review on direct appeal (on October 20, 1999) – when the time to file a petition for a writ of certiorari with the United States Supreme Court expired.  See Bowen v. Roe, 188 F.3d 1157, 1158-59 (9th Cir. 1999) (period of direct review in 28 U.S.C. § 2244(d)(1)(A) includes ninety-day period within which petitioner can file petition for writ of certiorari in United States Supreme Court, whether or not petitioner actually files such petition). Accordingly, the statute of limitations commenced to run on January 19, 2000 and absent tolling, expired on January 18, 2001, unless subsections B, C or D of 28 U.S.C. § 2244(d)(1) apply in the present case.  See 28 U.S.C. § 2244(d)(1)(A).
///

Subsection B of 28 U.S.C. § 2244(d)(1) has no application in the present case. Petitioner does not allege, and this Court finds no indication, that any illegal state action prevented petitioner from filing the Petition sooner.

Subsection C of 28 U.S.C. § 2244(d)(1) also has no application in the present case. Petitioner does not rely upon any constitutional right "newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review." To the extent petitioner suggests that the limitations period should not be deemed to have commenced until the California courts issued decisions in three cases which impact the CDCR's method of calculating prisoner credit (as possibly relevant to Ground Three), petitioner is incorrect. See Opposition at 2-4 (citing In re James Reeves ("Reeves"),[18] 35 Cal. 4th 765 (2005); In re Tate ("Tate"),[19] 135 Cal. App. 4th 756 (2006); In re Phelon ("Phelon"), 132 Cal. App. 4th 1214

---

[18]In Reeves, the prisoner had initially been sentenced to 10 years in prison for possession of a controlled substance for sale, together with enhancements. In a separate proceeding, he was sentenced to five years in prison for assault with a deadly weapon, together with an enhancement for causing great bodily injury. The latter offense constituted a qualifying violent felony for the purpose of CPC section 2933.1(a), i.e., an offense for which credit was limited to 15 percent. The implicit decision of the sentencing court for the latter offense was that the five-year term should run concurrently with the 10-year term imposed for the drug offense. The prisoner in Reeves, challenged the CDCR's calculation of postsentence worktime credits. The prisoner had, at the time of appeal, completed service of his sentence for the qualifying violent offense that limited his accrual of credits. He remained incarcerated solely under the longer, separate, concurrent sentence for the nonqualifying offense, that is, an offense that did not serve to limit the earning of credits. Nonetheless, the CDCR had continued to calculate the prisoner's postsentence worktime credits at the reduced rate against his remaining term for the nonqualifying offense. The California Supreme Court concluded that because petitioner had already served the term for the violent offense that caused CPC section 2933.1(a) to apply, the credit restriction under CPC section 2933.1 no longer applied to the time remaining on the separate concurrent term for a nonqualifying offense. See Reeves, 35 Cal. 4th at 768-69.

[19]In Tate, the petitioner received a prison sentence for an offense which qualified as a violent felony for the purpose of CPC section 2933.1(a), i.e., an offense for which credit was limited to 15 percent. During his imprisonment, he committed a nonqualifying offense. He received a consecutive sentence for the latter offense, but service of that sentence was not to commence until he had served his sentence for the qualifying offense. The Court of Appeal concluded that the fully consecutive sentence for the nonqualifying offense was not subject to section 2933.1(a). See Tate, 135 Cal. App. 4th at 758, 765.

(2005)).[20]  While the issuance of a new case from the *United States Supreme Court* may, in the circumstances specified in 28 U.S.C. § 2244(d)(1)(C), delay the commencement of the statute of limitations, petitioner cites no authority, and this Court's search has yielded no authority which holds that the issuance of new decision from state courts may delay the commencement of the statute of limitations in these or other circumstances.

Subsection D of 28 U.S.C. § 2244(d)(1) also has no application in the present case.  Under Section 2244(d)(1)(D), the statute of limitations commences when a petitioner knows, or through the exercise of due diligence could discover, the factual predicate of his claims, not when a petitioner learns the legal significance of those facts.  See Hasan v. Galaza, 254 F.3d 1150, 1154 n.3 (9th Cir. 2001); see also Redd v. McGrath, 343 F.3d 1077, 1084 (9th Cir. 2003).  Section 2244(d)(1)(D) "does not require that petitioners exercise the maximum diligence possible in uncovering the factual bases of their claims, but only 'due' or 'reasonable' diligence[,]" which "is an objective standard that considers the petitioner's specific situation."  Souliotes v. Evans, 622 F.3d at 1175, 1178.

---

[20]In Phelon – a case which the California Supreme Court has since disapproved (see In re Pope ("Pope"), 50 Cal. 4th 777, 784-75 & n.3 (2010)) – the petitioner had been convicted of (1) kidnaping with intent to commit rape; (2) assault with intent to commit rape; (3) assault by means of force likely to produce great bodily injury, and (4) making criminal threats.  At the time of the offenses, kidnaping with intent to commit rape did not qualify as a violent felony for the purpose of CPC section 2933.1, but the two assault convictions did so qualify.  Execution of the sentence for the qualifying offenses was stayed pursuant to CPC section 654 because the nonqualifying kidnaping offense carried a longer term of imprisonment.  The Court of Appeal concluded that the limitation upon postsentence worktime credit established by CPC section 2933.1 could not be applied to restrict the postsentence credit petitioner could earn for the term imposed on the kidnaping conviction because, so long as the execution of the sentences for the qualifying offenses was stayed, petitioner was not actually serving a sentence for those offenses.  See Phelon, 132 Cal. App. 4th at 1216-17.  In Pope, the California Supreme Court rejected this conclusion, noting that it viewed the petitioner in Phelon as a person who remained convicted of a qualifying offense within the meaning of CPC section 2933.1(a) and, as such, as a person whose eligibility to earn worktime credit against the kidnaping offense properly should have been limited to 15 percent.  Pope, 50 Cal. 4th at 785.

Turning to petitioner's claims, although petitioner appears to suggest that he did not became aware of the factual predicates for Grounds One, Two, and Four until he obtained and reviewed his sentencing transcript some time in 2007, due to his counsel's failure timely to turn over petitioner's file, Subsection D of 28 U.S.C. § 2244(d)(1) would not furnish a later trigger date for the commencement of the statute of limitations.  See Opposition at 2.   Ground One challenges the trial court's imposition of the ten-year sentence on the firearm enhancement accompanying count 2, and is thus predicated on events that petitioner knew or should have known no later than the date of sentencing.  Petitioner was present at sentencing and thus was contemporaneously aware of what occurred at such proceedings as reflected in the sentencing transcript.  See Appendix A to Lodged Doc. 15 (transcript of sentencing indicating petitioner's presence).  Certainly, petitioner was, or should have been aware of the factual predicate for Ground One before his conviction became final.  See United States v. Battles, 362 F.3d 1195, 1198 (9th Cir. 2004) ("Surely due diligence requires that [defendant] at least consult his own memory of the . . . proceedings.  His decision not to do so does not bespeak due diligence."); see also Johnson v. Lewis, 310 F. Supp. 2d 1121, 1126 (C.D. Cal. 2004) (Section 2244(d)(1)(D) inapplicable when "petitioner's own state court records establish that he was well aware of the 'factual predicate' for his pending claims . . . before the . . . limitations period began to run").

Grounds Two and Four appear to be based on the ineffective assistance of trial and appellate counsel relative to the imposition of the ten-year enhancement on count 2, and the failure to raise such sentencing issue on appeal.  "[T]o have the factual predicate for a habeas petition based on ineffective assistance of counsel, a petitioner must have discovered (or with the exercise of due diligence could have discovered) facts suggesting both unreasonable performance *and* resulting prejudice."  Hasan, 254 F.3d at 1154 (emphasis in original).  Petitioner, who was present at sentencing, was aware of or should have been aware of the fact his trial

12

1  attorney did not argue against the enhancement on count 2, and that counsel's
2  failure would result in prejudice, *i.e.*, service of the consecutive ten-year gun
3  enhancement on count 2.  See Appendix A to Lodged Doc. 15 (transcript of
4  sentencing).  Likewise, petitioner was aware that his appellate counsel did not
5  challenge the imposition of the enhancement on count 2 when counsel filed the
6  briefing on petitioner's direct appeal, and therefore was aware that counsel's failure
7  to raise the issue would not have altered petitioner's sentence.  Once again,
8  petitioner knew or should have known the factual predicate for Grounds Two and
9  Four no later than the date on which his conviction became final.

10      Finally, Ground Three asserts that the CDCR has improperly denied post-
11  sentence work time credit by crediting petitioner with 15 percent time rather than
12  50 percent time.  To the extent petitioner may suggest that the commencement of
13  the statute of limitations should be delayed because petitioner did not discover the
14  factual predicate for Ground Three until December 2007, when he learned of
15  above-referenced California decisions concerning CDCR credit calculations
16  (Reeves, Tate and Phelon), petitioner is incorrect.  See Opposition at 2-4.  A legal
17  decision is not a "factual predicate" within the meaning of 28 U.S.C. §
18  2244(d)(1)(D).  See Shannon v. Newland, 410 F.3d 1083, 1089 (9th Cir. 2005)
19  (unrelated state court decision establishing abstract proposition of law arguably
20  helpful to petitioner's claim does not constitute "factual predicate" for that claim
21  within the meaning of section 2244(d)(1)(D)), cert. denied, 546 U.S. 1171 (2006);
22  see also, e.g., Rose v. Cates, 2009 WL 2230727, at *5 (C.D. Cal. July 17, 2009)
23  (rejecting contention that new Supreme Court case constituted factual predicate
24  delaying commencement of statute of limitations); Murillo v. Dexter, 2008 WL
25  2620177, at *1 (C.D. Cal. July 2, 2008) (same).  Similarly, that petitioner may not
26  have recognized the legal significance of the CDCR's credit calculations until
27  petitioner commenced his own legal investigation (Opposition at 3), does not alter
28  the Court's analysis.  See Hasan, 254 F.3d at 1154 n. 3.  "The running of the statute

of limitations does not await the issuance of judicial decisions that help would-be petitioners recognize the legal significance of particular predicate facts." Taylor v. Vasquez, 2008 WL 4723022, at *2 (C.D. Cal. Oct. 21, 2008) (citing United States v. Pollard, 416 F.3d 48, 55 (D.D.C. 2005), cert. denied, 547 U.S. 1021 (2006)).

Additionally, petitioner has not alleged precisely when he learned that the CDCR was calculating petitioner's sentence credits at 15 percent, or provided any evidentiary support establishing when he allegedly learned (or could have learned) of the factual predicate for Ground Three. Petitioner's conclusory allegations are insufficient to delay commencement of the statute of limitations. See, e.g., Bond v. Rimmer, 2007 WL 2009810, at *19 (E.D. Cal. July 6, 2007) ("[P]etitioner's vague and conclusory assertions, unsupported by appropriate declarations and other evidence, fail to establish specific dates on which the factual predicates of [his claims] 'could have been discovered through the exercise of due diligence.' The vague dates cited by petitioner appear to be the dates on which or by which petitioner received all the information and evidence applicable to [his claims]. Thus, petitioner's arguments establish, at most, the approximate time by which petitioner had collected the evidence needed to support the claims. As such, the approximate dates provided . . . are irrelevant to the application of § 2244(d)(1)(D)."); Redmond v. Jackson, 295 F. Supp. 2d 767, 772 (E.D. Mich. 2003) (rejecting as "unsupported and conclusory" petitioner's assertion that newly discovered evidence contained in an affidavit gave rise to his claim to delay accrual of the statute of limitations; petitioner did not allege when he learned about the underlying facts contained in the affidavit); Frazier v. Rogerson, 248 F. Supp. 2d 825, 834 (N.D. Iowa 2003) (rejecting delayed accrual claim where petitioner "never identifies when or how he discovered his 'new evidence,' and his contention that he could not have discovered it sooner with due diligence is unsupported and conclusory"); Grayson v. Grayson, 185 F. Supp. 2d 747, 750-51 (E.D. Mich. 2002) ("[P]etitioner does not specify how the factual predicate of his claims could not

have been discovered earlier, nor does he indicate what steps, if any, he took to discover these claims.  Petitioner does not even indicate when he discovered the factual predicate of his claims, thus preventing this Court from determining when the one year limitations period would commence pursuant to § 2244(d)(1)(D).  This Court rejects petitioner's contention that the factual predicate for his claims could not have been discovered sooner because his argument is unsupported and conclusory."); Tate v. Pierson, 177 F. Supp. 2d 792, 800 (N.D. Ill. 2001) (petitioner's conclusory allegations were insufficient to justify tolling under section 2244(d)(1)(D), where petitioner did not allege any facts to support when he learned of underlying facts included in affidavit), aff'd, 52 Fed. Appx. 302 (7th Cir. 2002), cert. denied, 538 U.S. 965 (2003).

On the current record, petitioner has not demonstrated that he exercised reasonable diligence in discovering how the CDCR was calculating his sentence credits.  Arguably, petitioner knew or should have known that the CDCR would calculate his sentence credits at 15 percent on or about April 26, 1999, when the Department of Corrections wrote a letter to petitioner's trial judge indicating that petitioner should not be earning more than 15 percent credit pursuant to CPC section 2933.1.  See Petition Ex. C (including letter that was copied to petitioner). Petitioner also should have known on or about July 29, 1999, when the California Court of Appeal issued its decision on direct appeal finding that petitioner was entitled to only 15 percent credits pursuant to CPC section 2933.1.  See Lodged Doc. 3 at 8.

Accordingly, this Court's analysis below is predicated upon a statute of limitations commencement date of January 19, 2000 – the day after petitioner's conviction became final – for petitioner's claims.

**B.    Statutory Tolling**

Title 28 U.S.C. § 2244(d)(2) provides that the "time during which a properly filed application for State post-conviction or other collateral review with respect to

the pertinent judgment or claim is pending shall not be counted toward" the one-year statute of limitations period.  Petitioner has the burden of demonstrating the facts supporting tolling.  Smith v. Duncan, 297 F.3d 809, 814 (9th Cir. 2002), abrogation on other grounds recognized by Moreno v. Harrison, 245 Fed. Appx. 606, 608 (9th Cir. 2007), cert. denied, 552 U.S. 1121 (2008).

The statute of limitations is not tolled from the time a final decision is issued on direct state appeal and the time the first state collateral challenge is filed because there is no case pending during that interval.  Nino v. Galaza, 183 F.3d 1003, 1006 (9th Cir. 1999), cert. denied, 529 U.S. 1104 (2000).

Here, petitioner has not demonstrated that statutory tolling renders the Petition timely.  Petitioner neither filed, nor had pending any state habeas petition during the period in which the statute of limitations was running on his claims – i.e., from January 19, 2000 to January 18, 2001.  Petitioner's subsequently filed state petitions cannot toll the statute of limitations.  See Ferguson v. Palmateer, 321 F.3d 820, 823 (9th Cir.) (section 2244(d) does not permit reinitiation of limitations period that ended before state petition filed), cert. denied, 540 U.S. 924 (2003).

Consequently, statutory tolling cannot render the Petition timely filed.

## C.    Equitable Tolling

The United States Supreme Court has recognized that 28 U.S.C. § 2244(d) is subject to equitable tolling in appropriate cases.  Holland v. Florida, 130 S. Ct. 2549, 2560 (2010).  In order for a litigant to be entitled to equitable tolling, he must establish that:  (1) he has been pursuing his rights diligently; and (2) some extraordinary circumstance stood in his way.  Holland, 130 S. Ct. at 2562 (citing Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005)); Lawrence v. Florida, 549 U.S. 327, 336 (2007); Porter v. Ollison, 620 F.3d 952, 959 (9th Cir. 2010).  "[T]he threshold necessary to trigger equitable tolling is very high, lest the exceptions swallow the rule."  Mendoza v. Carey, 449 F.3d 1065, 1068 (9th Cir. 2006) (quoting Miranda v. Castro, 292 F.3d 1063, 1066 (9th Cir.), cert. denied, 537 U.S.

16

1003 (2002)).  Petitioner must prove that the alleged extraordinary circumstance was a proximate cause of his untimeliness and that the extraordinary circumstance made it impossible to file a petition on time.  Ramirez v. Yates, 571 F.3d 993, 997 (9th Cir. 2009); Roy v. Lampert, 465 F.3d 964, 973 (9th Cir. 2006) (citing Stillman v. Lamarque, 319 F.3d 1199, 1203 (9th Cir. 2003)), cert. denied, 549 U.S. 1317 (2007).  Petitioner has not demonstrated that he is entitled to equitable tolling.

First, to the extent petitioner intends to suggest that he is entitled to equitable tolling based upon his lack of legal knowledge or sophistication, a *pro se* petitioner's ignorance of the law and lack of legal sophistication, by themselves, are not extraordinary circumstances that warrant equitable tolling.  Rasberry v. Garcia, 448 F.3d 1150, 1154 (9th Cir. 2006); see also Waldron-Ramsey v. Pacholke, 556 F.3d 1008, 1013 n.4 (9th Cir.) ("[A] pro se petitioner's confusion or ignorance of the law is not, itself, a circumstance warranting equitable tolling."), cert. denied, 130 S. Ct. 244 (2009); Bolds v. Newland, 1997 WL 732529, at *2 (N.D. Cal. Nov. 12, 1997) (ignorance of law and lack of legal assistance do not constitute extraordinary circumstances justifying equitable tolling).

Second, to the extent petitioner contends that he is entitled to equitable tolling because he was not supplied with a sentencing transcript until some time in 2007, he is likewise incorrect.  See Opposition at 2.  As discussed above, petitioner was contemporaneously aware of what occurred at the sentencing because he was present at such proceeding – which was not lengthy.  Although petitioner conclusorily asserts that he was diligent in attempting to obtain the transcript in issue – something which is not supported by the record but which the Court will nonetheless assume is true for purposes of analysis – petitioner fails to demonstrate that the alleged failure contemporaneously to receive such transcripts proximately caused his failure to pursue his claim in *federal court* in a timely fashion.  See Randle v. Crawford, 604 F.3d 1047, 1058 (9th Cir.) (no equitable tolling where record reflected that petitioner sought legal file for purpose of filing state habeas

petition, nothing in record reflected that petitioner then contemplated the filing of federal habeas petition, and, despite petitioner's assertions to the contrary, record did not reflect that petitioner sought legal file for purpose of exhausting state remedies as predicate to filing federal habeas petition), <u>cert. denied</u>, 131 S. Ct. 474 (2010).  Although it is unclear from the record when exactly petitioner first asked for and received the sentencing transcript, he admits he had the transcript hand no later than 2007 – more than a year before he filed the instant federal Petition in 2010.  Accordingly, the record does not support petitioner's assertion that the absence of the sentencing transcript proximately caused his failure to pursue his claim in *federal court* in a timely fashion.

## IV.   RECOMMENDATION

IT IS THEREFORE RECOMMENDED that the District Judge issue an Order:  (1) approving and adopting this Report and Recommendation; and (2) granting the Motion to Dismiss because petitioner's claims are time-barred; and (3) directing that Judgment be entered denying the Petition and dismissing this action with prejudice.

DATED:   September 1, 2011

_____
/s/
Honorable Jacqueline Chooljian
UNITED STATES MAGISTRATE JUDGE

18